J-S42015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRANDON M. CARABALLO | : | |
| | : | |
| Appellant | : | No. 1898 EDA 2023 |

Appeal from the PCRA Order Entered June 9, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0003484-2021

BEFORE: BOWES, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY BOWES, J.:           **FILED FEBRUARY 9, 2024**

Brandon M. Caraballo appeals from the order denying his petition filed pursuant to the Post-Conviction Relief Act ("PCRA"). We affirm.

By way of background, Appellant was charged with numerous offenses for assaulting and threatening his former girlfriend, Lauren Dreyer ("Victim"). At a non-jury trial, Victim testified that Appellant punched her in the face on one occasion in April 2021 and later threw a television remote at her jaw following an argument in May 2021. In an ensuing text message, Appellant threatened to kill her. The trial court found Appellant guilty as to all counts, including simple assault and terroristic threats. On March 18, 2022, the court sentenced him to an aggregate two to five years in prison, followed by two years of probation. Appellant did not appeal.

Appellant filed this timely *pro se* PCRA petition approximately four months after sentencing. The PCRA court[1] appointed counsel, who filed an amendment to the petition. Therein, Appellant challenged the effectiveness of trial counsel on several bases. The court issued a notice of its intention to dismiss the petition on the merits pursuant to Pa.R.Crim.P. 907, and Appellant responded by filing a second amendment to the petition. Ultimately, the PCRA court denied the petition without a hearing on June 9, 2023.

This timely appeal followed. The court ordered Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b), and Appellant complied. Appellant raises the following issues on appeal:

> I. Did the [PCRA] court err in denying Appellant's [PCRA] petition without a hearing where trial counsel was ineffective in failing to:
>
>    A. Object to repeated leading questions by the prosecutor during testimony of [Victim]?
>
>    B. Object to irrelevant, inadmissible, and inflammatory testimony of [Victim]?
>
>    C. Object to irrelevant, inadmissible, and inflammatory text messages?
>
>    D. Object to irrelevant, inadmissible, and inflammatory victim impact testimony?
>
>    E. Request that the Bucks County judiciary be recused from hearing this matter?

Appellant's brief at 8 (cleaned up).

---

[1] The Honorable Gary B. Gilman presided over both the bench trial and the PCRA proceedings.

We begin with the legal tenets pertinent to our review. "On appeal from the denial of PCRA relief, our standard of review calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. We apply a *de novo* standard of review to the PCRA court's legal conclusions." *Commonwealth v. Wharton*, 263 A.3d 561, 567 (Pa. 2021) (citations omitted). Further, "[i]t is an appellant's burden to persuade us that the PCRA court erred and that relief is due." *Commonwealth v. Thomas*, 270 A.3d 1221, 1226 (Pa.Super. 2022).

Appellant's issues all assert that the PCRA court erred in denying, without a hearing, his claims that trial counsel was ineffective. In this vein, we observe that counsel is presumed to be effective, and the petitioner bears the burden of proving otherwise. *See Commonwealth v. Johnson*, 236 A.3d 63, 68 (Pa.Super. 2020) (*en banc*). To do so, he must establish the following three elements:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different.

*Id*. (citations omitted). Failure to prove any of the three elements will result in dismissal of the ineffectiveness claim. *Id*. (citation omitted). Additionally, "[w]e are not required to analyze the elements of an ineffectiveness claim in any particular order." *Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019).

With regard to the prejudice prong, our Supreme Court has defined actual prejudice as "[a] reasonable probability that, but for counsel's lapse, the result of the proceeding would have been different." *Commonwealth v. Crispell*, 193 A.3d 919, 932 (Pa. 2018) (cleaned up).

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.  Ultimately, a reviewing court must question the reliability of the proceedings and ask whether the result of the particular proceeding was unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.
>
> A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.  Such a determination necessarily requires an assessment of the trial evidence as a whole, measured along with what is proffered on collateral attack.

*Id*. (cleaned up).

> As to the right to a hearing, we have stated thusly:
>
> It is well settled that there is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary.  To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Maddrey*, 205 A.3d 323, 328 (Pa.Super. 2019) (cleaned up).

We now turn to Appellant's issues.  He first argues that counsel was ineffective for failing to object to thirty-one instances of the prosecutor

- 4 -

purportedly leading Victim during her direct testimony. *See* Appellant's brief at 16-17. The Pennsylvania Rules of Evidence state that "[l]eading questions should not be used on direct or redirect examination except as necessary to develop the witness's testimony." Pa.R.E. 611(c). The trial judge "has wide discretion in controlling the use of leading questions," and "the court's tolerance or intolerance for leading questions will not be reversed on appeal absent an abuse of discretion." ***Commonwealth v. Bibbs***, 970 A.2d 440, 453 (Pa.Super. 2009) (cleaned up).

Notably, Appellant does not analyze any individual leading question or proffer any explanation as to how a particular question prejudiced him. Rather, he asserts that the volume of leading questions itself suggests prejudice because, but for the prosecutor's conduct, Victim's testimony may have been different. *Id*. at 17. Appellant believes that trial counsel's decision not to object did not serve his interests. *Id*. at 17-18. At the very least, he contends that the issue should have been decided only after a hearing. *Id*.

The PCRA court determined that Appellant failed to prove the prejudice prong of ineffective assistance of counsel since this was a bench trial and "a trial judge sitting as a factfinder is 'presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence, and so will only consider evidence for its proper purpose.'" PCRA Court Opinion, 7/26/23, at 12 (citing ***Commonwealth v. McFadden***, 156 A.3d 299 (Pa.Super. 2017)). The court indicated that Victim, Appellant's former paramour, was generally hesitant in testifying at trial, so even if Appellant had objected, it would

nonetheless have permitted some use of leading questions on direct examination. *Id*. at 14. Additionally, it determined that a number of the purported leading questions listed by Appellant were "asked for the purpose of eliciting testimony that was introductory or preliminary to other material evidence[,]" whereas others were asked for clarification purposes. *Id*. The court concluded that counsel's decision not to object did not prejudice Appellant, since even if there was a proper objection, the prosecutor simply could have re-phrased any question. *Id*.

On review, we find that the PCRA court's decision to deny relief on this issue without a hearing is supported by the record and free from legal error. Specifically, Appellant has not demonstrated that his counsel's failure to object to these questions prejudiced him. While he lists thirty-one leading questions in his brief, he neglects to discuss the context of the exchanges wherein they took place. Our review of the entire testimony bears out the PCRA court's conclusion that many of these instances of "leading" questions occurred to set up a next question or clarify a portion of the immediately preceding testimony. By way of example, many of the inquiries that Appellant now contests came immediately after Victim described a physical and verbal altercation with Appellant, and the prosecutor expressly stated, "[s]o let's just step back and take it step by step for a minute," before asking a series of questions that referenced and sought to clarify Victim's testimony. *See* N.T. Trial, 12/3/21, at 36-39.

Appellant identifies no specific way in which Victim's testimony would have been different had counsel objected to these questions, beyond a bald assertion of prejudice by volume. As the PCRA court correctly noted, to the extent any questions were improper and counsel objected, the court would have allowed the prosecutor to rephrase the question, and hence there was no prejudice by counsel's inaction. Additionally, since this lack of prejudice is apparent from the record, the PCRA court did not err in denying relief without a hearing. Therefore, this claim must fail.

In his second issue, Appellant faults counsel for not objecting to portions of Victim's testimony that he asserts were irrelevant and contained improper character evidence. Under Pennsylvania law, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). As a general rule, all relevant evidence is admissible and all irrelevant evidence is inadmissible. *See* Pa.R.E. 402. However, even relevant evidence may be excluded if its probative value is outweighed by the danger of, *inter alia*, unfair prejudice. *See* Pa.R.E. 403.

Testimony concerning a defendant's prior bad acts is governed by Pa.R.E. 404(b), which we have discussed as follows:

> Evidence of crimes other than the one in question is not admissible solely to show the defendant's bad character or propensity to commit crime. Nevertheless:
>
> > Evidence of other crimes is admissible to demonstrate (1) motive; (2) intent; (3) absence of mistake or

accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) the identity of the person charged with the commission of the crime on trial. Additionally, evidence of other crimes may be admitted where such evidence is part of the history of the case and forms part of the natural development of the facts.

***Commonwealth v. Dozzo***, 991 A.2d 898, 902 (Pa.Super. 2010) (cleaned up). "When offered for a legitimate purpose, evidence of prior crimes is admissible if its probative value outweighs its potential for unfair prejudice." ***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa.Super. 2015) (citation omitted).

Here, Appellant identifies in his brief fourteen places in Victim's testimony that purportedly reference Appellant's bad character or irrelevant matters. **See** Appellant's brief at 20-21, 23-24. Generally, the testimony he highlights related to prior, uncharged incidents of violence and threats Appellant perpetuated against Victim. **Id**. at 20-21. Further, some of the testimony Appellant characterizes as irrelevant included Victim's fear of Appellant and her explanations for why she did not immediately terminate her relationship with him after previous bouts of abuse. **Id**. at 23-24. Appellant asserts that none of this testimony was admissible because it was either irrelevant or because it did not satisfy any cognizable exception pursuant to Rule 404(b). **Id**. at 21-22. He alternatively contends that even if the evidence was admissible, the probative value was outweighed by the danger of unfair

prejudice due to its inflammatory nature. *Id*. at 22-26. Accordingly, Appellant faults trial counsel for not objecting to these remarks.

The PCRA court rejected this claim on several bases, including because some of the challenged testimony was offered for appropriate, non-propensity purposes. *See* PCRA Court Opinion, 7/26/23, at 18. Notably, however, it found that none of the admitted statements was "so egregious that they would overcome the presumption that the [c]ourt, sitting as factfinder, would disregard unduly prejudicial or inadmissible evidence." *Id*. The court concluded that had an objection been lodged by Appellant, "it would have been futile." *Id*.

After review, Appellant has not convinced us that the PCRA court erred in denying his petition as to this claim. Assuming, without deciding, that certain irrelevant or improper character testimony was admitted at the bench trial, Appellant has nevertheless failed to prove the prejudice prong required to show ineffective assistance of counsel. As the factfinder, the law presumes that the trial judge will "ignore prejudicial statements[.]" *McFadden*, *supra* at 309. Our examination of the record shows that the majority of the challenged remarks were made by Victim in passing, buried within her broader testimony concerning the underlying charges. None of these statements was belabored by the prosecution, nor did they appear to form the basis for Appellant's convictions for simple assault or terroristic threats.

For instance, Victim testified that the incident where Appellant threw a remote at her face was precipitated by an argument concerning his frequent

telling of a story about beating his ex-paramour's dog. While Appellant maintains that such testimony was prejudicial and cast him in a negative light, he makes no attempt to persuade us that the learned trial judge was incapable of considering this testimony solely as part of the *res gestae* of the assault. In short, Appellant has not convinced us that but for trial counsel's inactions, the result of the bench trial would have been different. He is therefore not entitled to relief on this claim.

Next, Appellant asserts that trial counsel was ineffective for failing to object at trial to the admission of screenshots of certain text messages between Appellant and Victim. ***See*** Appellant's brief at 26-27. Appellant identifies five message threads particularly in his brief. ***Id***. The threads consisted of a conversation between Victim and Appellant occurring in the days after an incident of violence, and therein Victim called Appellant a "liar" and stated that he has "serious issues." ***Id***. As with his previous claim, Appellant avers that the messages should not have been admitted because they were either irrelevant to the underlying charges or because the statements were inflammatory and highly prejudicial. ***Id***. at 27.

The PCRA court determined that, based on the record, there was a reasonable basis for counsel's actions in not objecting to admission of the text messages. ***See*** PCRA Court Opinion, 7/26/23, at 19-20. It recounted that the content of all text messages between Victim and Appellant were contained in an extraction report, which was introduced into evidence over Appellant's relevancy objection. ***Id***. at 19. The screenshots of the text messages in

question were introduced later, and contained the same information as what was already included in the admitted extraction report. *Id*. at 19-20. Therefore, the court determined that admission of the screenshots was merely cumulative of the extraction report, and counsel accordingly had a reasonable basis for not objecting a second time to the screenshots. *Id*. at 20.

We believe that the PCRA court is correct, and therefore hold that it did not err in denying relief as to this claim without a hearing. The record indicates that had trial counsel objected to the screenshots, it would have had no bearing on the outcome of the proceedings since the substance of those text messages were previously admitted in the extraction report over counsel's objection. Thus, counsel had **already** objected to the disputed messages based on relevance and will not be deemed ineffective for objecting on this ground again, since doing so would have been fruitless. Additionally, with his blanket assertions and lack of discussion as to the contents of the screenshots, Appellant has not persuaded us that that the trial court failed to disregard any prejudicial information from the text messages, and therefore has not met his burden of proving prejudice by counsel's decision not to object. *See McFadden*, *supra* at 309.

In his fourth issue, Appellant contends that trial counsel was ineffective because he did not object to a portion of inflammatory statements made by Victim that were included in the presentence investigation ("PSI") report that was admitted at Appellant's sentencing hearing. *See* Appellant's brief at 27-29. Without identifying the exact remarks in his brief, Appellant nonetheless

asserts that they contained "a litany of accusations regarding uncharged prior bad acts which were not appropriate for consideration by the court." *Id*. at 28. He argues that there was prejudice arising from these statements because the trial court openly relied upon them in imposing a lengthy state sentence, as the court read some of the statements into the record. *Id*. at 28-29. Appellant again reiterates that counsel had no reasonable basis to refrain from objecting, and that this claim should have been developed through a hearing. *Id*. at 29.

The PCRA court concluded that Appellant failed "to explain how trial counsel's failure to object to the court's reading of certain portions of the PSI report into the record actually unduly prejudiced him, other than explaining that all of the allegedly impermissible evidence had a cumulative prejudicial effect." PCRA Court Opinion, 7/26/23, at 21 (unnecessary capitalization omitted). The court acknowledged that Appellant likely disputed some of the material included in the PSI report, but it noted that "the [trial c]ourt's primary concern was whether Appellant was motivated to get the treatment he needed." *Id*. It further indicated that "[w]hile it may not be appropriate to state that the [c]ourt **ignored** the victim impact evidence presented in the PSI report, the record shows that, upon imposing sentence, the [c]ourt considered Appellant's treatment needs and capacity for rehabilitation just as much as, if not more than, the evidence of Appellant's negative impact on the victim." *Id*. (emphasis in original). In finding that Appellant failed to prove prejudice, the court highlighted that the sentence imposed was six months

less than that requested by the Pennsylvania Department of Probation and Parole. *Id*. at 21 n.7.

Again, we find no error with the court's decision not to grant relief. In his brief, Appellant did not identify or analyze the particular statements that should have been challenged, and therefore failed to meet his burden to convince us that the claims had either arguable merit or prejudice. Further, while the trial court did recognize and evidently consider certain portions of Victim's statement in the PSI, it also acknowledged on the record that Appellant likely disputed them. *See* N.T. Sentencing, 3/18/22, at 15. There is no indication in the record that the court improperly considered anything to Appellant's detriment in fashioning the sentence. *See*, *e.g.*, *Commonwealth v. King*, 182 A.3d 449, 459-60 (Pa.Super. 2018) (concluding that the sentencing court was not unduly prejudiced by improper victim impact statements, when the court "provided adequate and sound reasoning for the sentence imposed"); *Commonwealth v. McLaughlin*, 574 A.2d 610, 615 (Pa.Super. 1990) (stating that inflammatory statements in a PSI report are "unlikely to have a significant effect on an experienced trial judge" and that a sentence proportional to the seriousness of the charges reflects a lack of unwarranted influence of any such statement on the judge).

Likewise, our review of the record confirms the PCRA court's assertion that in sentencing Appellant, the trial court extensively discussed Appellant's rehabilitative needs, including his need for treatment for post-traumatic stress disorder that potentially arose from his prior military service. *See* N.T.

Sentencing, 3/18/22, at 6-8, 12-15. Indeed, mindful that the trial court also had the benefit of the PSI report, "we presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Wallace*, 244 A.3d 1261, 1279 (Pa.Super. 2021) (cleaned up). As the court's sentence reflects consideration of the appropriate sentencing factors, Appellant has not proven that had trial counsel objected to certain portions of the victim impact statement, his sentence would be any different. This argument warrants no relief.

In his final claim, Appellant contends that trial counsel was ineffective for failing to file a motion for the trial court to recuse itself from conducting the bench trial. *See* Appellant's brief at 29-31. As to this issue, we have stated:

> As a general rule, when circumstances arise during the course of trial raising questions of the trial judge's bias or impartiality, it is the duty of the party, who asserts that a judge should be disqualified, to allege by petition the bias, prejudice, or unfairness necessitating recusal.
>
> There is a presumption that judges of this Commonwealth are honorable, fair and competent, and, when confronted with a recusal demand, are able to determine whether they can rule in an impartial manner, free of personal bias or interest in the outcome. If the judge determines he or she can be impartial, the judge must then decide whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary. This is a personal and unreviewable decision that only the jurist can make. A judge's decision to deny a recusal motion will not be disturbed absent an abuse of discretion.

- 14 -

*Commonwealth v. Kane*, 188 A.3d 1217, 1225-26 (Pa.Super. 2018) (cleaned up).

At trial, County Detective Eric Lamdamia testified that his investigation of the underlying case was triggered when he received information that Appellant had sent Victim a threatening text message about the Honorable Diane E. Gibbons, a jurist of the Court of Common Pleas of Bucks County.[2] *See* Appellant's brief at 30. Appellant believes that because there were accusations that he made a threat toward the judiciary, there was an appearance of impropriety in allowing Judge Gilman to hear the case. *Id*. He asserts, without meaningful discussion, that a significant minority of the lay community could have reasonably questioned the court's impartiality in this case. *Id*. at 31. Therefore, counsel should have filed a motion for the court's recusal.

In addressing this issue, the PCRA court indicated that it considered Appellant's threat to Judge Gibbons as "veiled." PCRA Court Opinion, 7/26/23, at 22. It stated that it "was not of such a character that this [c]ourt had any concern about its ability to conduct and decide the case, and subsequent

---

[2] None of the testimony at trial indicated the exact wording of the purported threat. In his brief, Appellant asserts that the threat was alleged to have been made by Appellant via text message stating that "while Judge Gibbons has a reputation for being harsh, Appellant was harsher." Appellant's brief at 30. The PCRA court indicated that it did not recollect the precise phraseology of Appellant's reputed threat and that it was not made part of the record. However, it recalled that the threat "stated, to the effect, that while Judge Gibbons may have had a reputation of being harsh, [Appellant] believed he could be harsher than her." PCRA Court Opinion, 7/26/23, at 22. Judge Gibbons did not preside over either the non-jury trial or the PCRA petition.

sentencing, fairly and impartially in all respects." *Id*. The court further determined that Appellant did not point to any identifiable bias from the court in how it handled the case. *Id*. at 23. Finally, it noted that Appellant proffered no reason as to why an alleged threat made against one trial judge would necessarily require other trial judges from the same county to recuse themselves. *Id*.

Upon review, we find no error with the PCRA court's decision. As the court correctly articulated, Appellant advanced no argument or authority supporting the proposition that a threat directed to one judge of the trial court warranted recusal of all judges sitting on that court, or that such a threat created an appearance of impropriety. Had trial counsel filed a motion for recusal as to the entire bench of the Bucks County Court of Common Pleas, it would have been destined to fail. Failure to take a futile action cannot constitute ineffective assistance of counsel. *See*, *e.g.*, *Commonwealth v. Davis*, 262 A.3d 589, 596 (Pa.Super. 2021) ("Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim.").

In sum, Appellant has not met his burden of proving that his trial counsel was ineffective. Likewise, he has not raised any genuine issue of material fact that required resolution via a hearing. The PCRA court therefore did not err in denying the petition without a hearing.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/9/2024